Good afternoon, Your Honors. Michael Bernanke for Reliance Standard Life Insurance Company. I would like to reserve five minutes of my time for rebuttal. Okay. You have the clock in front of you. Okay. Thank you. This panel has requested that we limit our argument in this case to the issue of whether or not a third-party insurer, such as RSL, can be sued under ERISA Section 502A1B, even though it's neither the plan nor the plan administrator. I'd like to start off my argument by acknowledging that in certain circumstances, it might be more practical to have a direct cause of action against the insurer under the statute. However, I also believe that Ford and Everhart were correct when they found that the face of the statute simply doesn't permit it. Now, to the extent we're going to take a practical approach to who's a defendant under 502A1B, the question arises is how you go about making insurance companies defendants. The plaintiffs' appellees have advocated that we simply call them functional or de facto administrators. Could I just correct you slightly? I don't think Everhart said it didn't permit it. It didn't expressly authorize it. I'm sorry, Your Honor? I think Everhart did not say it didn't permit it. It said it doesn't expressly authorize it. I think that – I would agree with that, Your Honor. I hope so. With respect to – I'm reading it. With respect to whether or not, I was going to say the plaintiff appellees have advocated we adopt this functional administrator test, I think that's going to be a problem for a variety of reasons. First – Well, why do you have to – let me ask you a question first. What if you say it would be practical, but it's not permitted? So what would be permitted in your view? In other words, if it was the insurance company that was refusing to pay and the plan and the plan administrator thought they should pay, let's assume that the beneficiary could sue the plan and the plan administrator, maybe get the benefits, and then what? Could the plan and plan administrator go back against the insurance company? Exactly. How? They would just simply file a counterclaim, possibly under 8383. They could potentially have State law causes of action. Could State law causes of action be preempted, or is there any case law about that? I don't believe they would be. If it wasn't allowed under 8383, I think they would have a declaratory relief action under State law. We see that all the time, Your Honor. I think that the contract is between the employer and the insurance company to provide benefits, basically. And I think that if an insurance company is willfully refusing to honor that contract, they would be in breach of contract. And there's no risk of preemption problem, given the breadth of the fact that it does relate to an employee benefit plan? To the extent it would either be an A3 claim or it would be a State law claim. And I believe there would be. My second question is why isn't this an A3 claim? This should be an A3 claim, I think, technically. I think that by the beneficiary against the insurance company. I think that the statute provides for a beneficiary to bring an A3 claim against an insurance company. So we're just talking about what section it's under? It's all the same thing? Well, I think that the Supreme Court's been clear that 502a1b, if there is a valid claim for plan benefits, you could sue under section 502a1b. You don't have an A3 claim at that point in time. Right. Okay. However. If you can't, then you can bring an A3 claim and you're in the same place, no? I'm sorry, what? If you can't, you could bring it under A3 and you still get the same relief under the same standards? Well, no, it's a little bit different. I think one of the things, and I know the Court doesn't want us to go out and talk about the underlying facts in this case, but one of the arguments is under 502a1b, the way the case law is developed, plaintiffs were able to argue that we couldn't bring a defense, basically, on the merits, that we had waived the defense. I think that the claim was brought under A3. It's an equitable claim and all the evidence comes in. So that's what the fight about, I think, is in this litigation. A1b, basically, the Court never reached a decision on the merits of the case and the underlying action. They simply – he simply found that we waived our right to provide a defense. Under A3, it's an equitable claim and I think the Court would have to consider all the evidence if they brought it under that subsection. Mr. Bernanke, I'm sure you're aware Judge Reinhart wrote a dissent in the Everhard case. Yes. In which he cited a number of other circuits who come to the opposite view of what we did in Gilardi and Everhard itself, of course. They, of course, view 1132a1b entirely differently. I'd just like to ask you a couple of questions about that. Yes. Putting Gilardi aside for a minute, where in the text does it say anything regarding potential defendants in that code section? Well, I think if you look at 1132a1b, it appears to be self-limiting on its face. I mean, it says a participant or beneficiary can bring an action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. It doesn't say that the beneficiary can bring an action to enforce his rights under the subsection. Well, it doesn't say anybody can bring anything, does it? Well, it says the beneficiary can, but it doesn't say who the defendants are. It doesn't say who the defendants would be. It specifically doesn't, but it seems to limit it to the ---- Yeah. That's your construction. But in the statute itself, it doesn't say who can be sued, right? The statute specifically does not delineate a defendant, but I think other parts of the statute support it. Okay. And in that same section, does it say anything about suits for benefits? It says to recover benefits. It doesn't say suits. Okay. But it doesn't say suits. So the reality is you're dealing with two fundamental issues here, who can be the defendants and whether there can be a suit at all. It's the silent ---- the statute is silent about it, right? It doesn't say anything about it. I know you interpret things from the context of the statute, but when you look at what other circuits have done in construing the same statute and the fact that it is silent on those two points, why aren't the other circuits, and I think specifically we're talking about the First, the Seventh, and the Third, at least, have decided otherwise, why aren't they right? Well, if you look at these cases, there's not a lot of analysis as to who's a proper defendant. That's a problem, isn't it? To a certain degree. I think a lot of these cases, courts are talking past each other. I think you also have to look at the premise of ERISA. ERISA at its core is Federal trust law. It was meant basically to preempt the contracts that regulated employer-employee benefits. And under traditional trust law, the concept is simply that if a beneficiary has a problem with how a third party is performing, basically, it sues the trustee. Do we do that de novo? Do we owe any deference to the Secretary? Do you owe any deference to the Secretary? I would say not with respect to if you believe the statute is clear or if you believe this. You've already said it's ambiguous. I don't think it's ambiguous. It doesn't speak to it, and you said everything, but if you didn't use the word And perhaps some other, but I'm going to specifically answer to Judge Smith. You said, well, it doesn't speak to it. So if the statute doesn't speak to it, isn't that and it's a matter of construction, why wouldn't this be something where you'd say, well, you know, there are good views on both sides and we defer to the Secretary? Well, I think that in this case, I think they're not equally valid views. But they don't have to be equally valid. Yeah. I think But to allow, to accord administrative deference, you could have a view that's more plausible than the other one, but if you, if the agency's interpretation is entitled to deference, the less plausible view must prevail, right, if that's the view taken by the administrator? Well, yes, I mean, but to the Secretary, but I think that in this particular case Well, I meant the Secretary in this case, but whoever the administrator is, whoever the administrator in charge of the The plan These are general principles of administrative law. In this case, the administrator happens to be the Secretary. Secretary of Labor, exactly, yes. You mentioned that the ERISA is a trust law, and of course it is, but I don't think you or the Secretary or anybody brought up the concept of common law trust law, did you, in your briefs? Well, no, I mean, I think the way this case originated, with all due respect, I'm not sure that we should be the appellants. I mean, I think No, I'm not trying to be argumentative, but I'm not suggesting that you should have brought it up. I'm simply saying that at this point, we really can't get very far on your argument that ERISA is a trust law, and we can go on some principles other than what the statute says, can we? Well, I think you can't. I mean, I think it's an explanation of interpreting the statute. I don't think the Court has to necessarily ignore it just because we Because nobody briefed it. Because, well, I mean, I think if you want to get the right concept, basically. My question about, I'm really baffled about your answer with regard to A-1 and A-3, because it appears now that we're really arguing about very little, because you've never conceded anywhere else that I know that there is a cause of action here at all, and you said to me before that there is a cause of action under A-3. So if there is a cause of action under A-3, you're supposing for some reason that you'd be better off on the particular facts of this case under A-3, and we have no idea, because you certainly never told the district court that you thought there was a cause of action under A-3. Well, under this particular case, I was using it, and let me back up for a second. When I was talking about would a participant generally have an action under A-3, I would say yes. Yes. In this particular case, I'm not sure if they would have, for the simple reason that 502 – 502A3 is not available if there is a valid cause of action under 502A1 of being against the plan. Well, that becomes completely circular, but you're saying nonetheless it's either under A-1B or under A-3, so we really are arguing about almost nothing. Not in this particular case, because in this particular case, they entered into a release with the plan, basically, and the Supreme Court's been – No, I mean against the insurance company under A-3. And I understand that. The Supreme Court's been very clear that if you have a valid cause of action under 502A1B, you don't have a cause of action under 5A3. In this particular case, the reason they don't have a valid cause of action under 502A1B, if you limit it to the plan, is simply because they released it of their own volition. So there is an argument that they don't have a valid cause of action under A-3 either. It is interesting that in Harris Trust, the Supreme Court was asked to determine whether there was a non-third party – non-fiduciary third party that could be held liable for its involvements. And the Court said, referencing trust law, that even though there was a non-fiduciary third party, it was less culpable than the fiduciary. Nonetheless, there was an action. Using trust law. So why can I not use the same analysis in this provision? Well, I think Harris Trust is a little bit different for two reasons. Different statutes and the rationale in Harris Trust was different. I mean, different subsections. I don't know whether there's different statute. I mean, they're both in A. 502A3 basically – you're right, I apologize, subsections. 502A3 basically allows a fiduciary, a beneficiary or plan participant to enjoin any act or practice which violates the subchapter or the terms of the plan. That's inherently broad, and I think it necessarily potentially incorporates third parties, basically, who are non-fiduciaries. Once again, 502A1B only talks about recovering benefits under the terms of the plan. The second thing is the rationale in Harris Trust was different. Even though the Court noted that there were no defendants specifically delineated in that subsection, the Court came back and basically said we still have to be cautious about inferring remedies under ERISA. The simple reason for that is because it's a comprehensive and reticulated statute that was based on a 10-year study of the employment system in this country. However, we found other statements of the statute which we believe give us a basis to infer a remedy against a third party. Specifically, 502A5, which is the civil action brought by the Secretary of Labor, contemplates that other parties will be penalized if the Secretary of Labor brings the action. 502A5 is identical to 502A3, and the Supreme Court came back and said there would have been no reason for Congress to allow in an identical statute other parties being sued under 502A5 and not 502A3. Conversely, the opposite is true with 502A1B. There is no corresponding statute. The only other thing that you can look to is 502D, which specifically defines the ERISA benefit plan as a legal entity and specifically says it can be sued and sued in its own capacity. I think that's important. I think that's very fundamental, because traditionally under trust law, you couldn't bring an action against the trust. You had to bring it against the trustee. The fact that Congress, Congress went to the lengths of creating these benefit plans as legal entities and basically essentially corporations and then limiting the language under 502A1B to benefits under the terms of the plan, to me, suggests highly that they only wanted the plan to be a defendant. I would like to talk about the functional fiduciary argument that the plaintiffs have made. Well, I don't understand why that matters. If you thought, 5-0, if you thought that there was no limitation in A1B, then it would simply be a causation question, right? It would be a case by the participant or beneficiary against anyone who has caused them to not get benefits under the terms of the plan, and as an insurer, you'd be the prime person. Why do you have to be called anything other than a fiduciary and an insurer? Well, you mean under 502A1B or A3? A-B. A-1B. I mean, I think that, I think that traditionally what you want is the rationale for making the plan the defendant is because the plan is where all the assets are deposited. I think one of the things that's not true, excuse me, isn't it true in most of these benefit plans that there are no assets that are deposited anywhere? Well, I should say assets. I should say where everything comes together, basically. I mean, in CTI, in this particular case, CTI was the plan administrator. RSL provided disability insurance to the employees of CTI. There was a lot of other benefits that CTI was providing. There was life insurance. There was medical insurance. There was vision, basically. The reason that I think Congress went and said we're going to let you sue for plan benefits is because it's easier in a lot of cases for the participant just to simply go through the plan and let the plan sort out who the proper defendant is. And that's the other part I wanted to point out, which is it's not like the plans are being sued in these cases. I think what we the analogy we have to make is we have to make an analogy similar to third-party liability insurance. Where an insured gets sued, the insurance company basically comes in and accepts tender of defense, settles the claim, universally almost, this is what's happening in these ERISA cases. When the plan does get sued under 502A1B, generically they tender the defense to the insurance companies. And the insurance companies come back and almost universally accept the tender of defense. What they do, though, in that letter is they simply limit it to their exposure under the policy. And I think that's very important, too, that we don't conflate policy benefits with plan benefits. There was a case that was cited by the Secretary of Labor. I think it was Cersio or it was Cursio, basically. And it was out of the, well, they don't have the circuit. I apologize. In that case, you had the employer, the plan administrator, purchase AD&D insurance from an insurance company. And they went out and the employer also prepared a summary plan description. And the summary plan description promised these individuals more coverage than the insurance company's contract provided for. If you start conflating these terms, if you start saying insurance companies are responsible for plan benefits, you potentially make these insurance companies liable for things they never contracted. And that's what happened in the Seventh Circuit and the Third Circuit, who interpret the statute differently. Well, I'm not sure if that's happening. I mean, I will say this. It's a rarity that these issues even come up. I mean, almost universally. But that's what that follows anyway. Saying they can be sued doesn't tell you the extent of liability. I mean, obviously you can be sued. The fact that you can be sued doesn't mean you can be sued for trade divest or for copyright infringement or for patent infringement. It has to be a lawsuit for something for which you're actually liable. So the argument he made just makes no sense at all. Well, I do think, though, it says to recover benefit dues to him under the terms of his plan. No, no. The example he gave is that, you know, the plan summary provides for more benefits than the policy. That's what you said, right? Yeah, exactly. And, you know, but that is a dispute about how much they can be sued for. Can they be held liable for what's in the plan summary when the policy is different? I don't know what the answer to that question is, but that is an extent of liability question. That is not a who can be sued question. I think you're absolutely right. You could very well say the insurance company could be sued, but in that case, the example that you gave, they wouldn't be liable because they didn't participate in the plan summary. And you're absolutely right on that. So that argument supports your position not at all. Well, to a certain degree it does, basically. Not at all. Why don't you tell me why? Why does it support it at all? Because I was raising that in the context of them calling us the plan administrator. And the plan administrator is a term of art within ERISA. But that's what you litigate when you litigate the extent of liability and whether or not you're liable. You say, you know, we should be called because of a plan administrator. We should not be called, you know. And that's what you talk about once you are sued. But what does that have to do with the question of whether you can or cannot be sued? Because, well, once again, I did address the whether we could be sued. I guess with the extent of liability, what I'm proposing is that if you start calling us a functional or de facto administrator. Once again, can you explain why we have to call you anything other than a defendant in the case who caused the injury that the statute relates to? And if we need to call you anything else, we can call you a fiduciary, because you are a fiduciary, right? We are a fiduciary. We don't dispute that. Okay. So why do we need to call you anything else? And I understand that. And once again, what I'm trying to do by this argument with the ---- So you'd be having an opinion saying you're on the hook, but you're not one of those things. If the Court goes that way, that's one of the things I'm here to do, basically, is to make sure that the enchantment control, that an en banc decision doesn't be a de facto or functional administrator test.  I'm not trying to say insurance companies are administrators because also there's certain statutory obligations that go along with being a plan administrator. There's certain ---- and like I said, you can conflate plan and policy benefits. So that was the purpose of the argument. They are advocating a de facto or functional administrator test, and that can be a potentially dangerous concept. That's not been done in the First and the Third and the Seventh, has it? No. Are there problems? You know, I don't ---- No, no, no. They've been worried about the nomenclature that seems to trouble you. Well, I think if you look at a lot of these cases, what happened is these cases originally looked at the face of the statute, and to them it was clear. I think Leister, I think it was Judge Posner, it was a throwaway line, and I'm going to misquote him, I know, but it was something to the effect of he dismissed the arguments that 502d basically gave support that the plan was a proper defendant. But he also said something like it seems patently obvious that the entity responsible for bland benefits is the plan. So he was going into patents, just a different kind. Yes. But I think ---- Isn't your argument really made because we have law that suggests you can't be sued? So they have to come up with a function that you might do for those that we have allowed to be sued. And if we change the law and allow you to be sued directly, then you don't have to go through this functionary approach. Isn't that the truth? Well, I think it's the truth. And I'll say something else. So it would not be better, then, for you to be able to be sued directly rather than be sued as a functionary. And I think ---- I mean, my problem is, is that your argument seems to be circular. Either the statute says you can be sued or it doesn't. It may be a great argument that you're not a functionary, but based on our case law, that's the only way they could get to you. If you're allowed to be sued directly, you don't have to be a functionary for the problems you create. Well, and ---- As a fiduciary, if nothing less. And I understand. And I understand the point. My ---- If you're asking me what the statute says and what it intended, I believe it intended only the plan to be sued. I truly do. If you're asking me if that's a functional ---- Are you really saying that, as I understood your argument, you're really not going to D to make that argument? I am, in conjunction with 5-1-3-1-B. Yes. With 1-B? Yes. I think you read it in conjunction, and I do believe that. But what I'm saying is, from a practical approach, and I think that's how you've gotten this functional administrator de facto administrator, because the statute seems somewhat clear to me, and then the courts are faced with these situations where it doesn't make sense. Maybe the error basically is with Congress. Maybe they could have basically crafted the statute a little bit better. Do you want to try once more to tell us what's clear about this? What's that? Do you want to try once more to tell us what's clear about this statute? I think that it's self-limiting. I think that Section 502A1B basically, I think the fact that to enforce his rights under the terms of the statute. On the other hand, you think Congress didn't do a very good job of laying it out. So it seems to me that those are different. I mean, if Congress didn't do a very good at laying it out, then it's ambiguous. Then I need to look at what the Secretary would argue. I think things have moved in a direction that perhaps Congress didn't contemplate. I think that in reality this isn't a problem, because the simple fact is that most insurance companies are basically accepting defense or they're not even disputing their liability under 502A1B. I think you hit it on the head where in a lot of situations they don't mind being sued. And I'll be honest with you. If you're asking me what the interpretation of the statute is, I think it's very clear that it's only the plan that's an appropriate defendant. If you're asking me what is the most functional and practical approach, I completely understand if you hold insurance companies liable up to the extent of their liability under the policies. But I think that an en banc decision has to be very careful, because if laying it, and I think it was pointed out in a lot of these opinions, functional administrator, plan administrator, you know, it's been used loosely, and that's why we're in this problem, basically. So if I understand you correctly, what you're saying is you kind of sense that maybe we might change some of our cases, and you understand that the insurance companies might be defendants. You're not too troubled about that, because you end up getting the insurance. It's tendered to you anyway under the current situation. Exactly. So you're not too worried about that. What you're worried about is you don't want us to categorize the role in which you are sued. Take that on a case-by-case basis and don't mess up the nomenclature. Is that basically what you're saying? I think that's a fair assessment, yes. Yeah. I've got a question. Do you want to save your time for rebuttal? Yeah, I will save my time for rebuttal. Thank you. Okay. We will hear from, well, I don't know, either Mr. or Ms. Sear or the Secretary of Labor. You can take your turns. Good afternoon, Your Honors. My name is Joe Garfolo. May it please the Court, I represent the appellee, Laura Sear. With me at the counsel's table is my co-counsel, Joseph Kreitz. The issue before the Court centers around ERISA's statutory cause of action for benefits, 502A1B. RSL's reliance on 1132D has no relevance to this case. However, if one were to parse the language of 1132D, 1132D provides that a money judgment against a plan is only enforceable against such plan unless liability is established against another person, individual liability. And thus, even 1132D contemplates liability against parties other than a plan or a statutory plan administrator. In addition, a claim in this instance, a claim against RSL, is just like a first-party claim. Under the policy, the terms of the policy set forth the insurer as the participant or beneficiary, and that's on the record in the policy at 3 ER 555. In addition, under the policy, the insurer pays benefits directly to participants and beneficiaries. So we do not agree with Mr. Bernanke that this is like a third-party claim. This is actually a first-party claim. The insured is suing her insurer. Further, if RSL's position were to prevail, then participants could be potentially left without remedies. The Court discussed ERISA section 502A3, and it's not at all clear if there would be a remedy under 502A3 for this type of lawsuit. The Supreme Court has limited remedies under 502A3 to equitable relief and relied on the days of the divided bench to determine what types of remedies are available. So it's possible here that Ms. Sear could be deprived of a remedy entirely if she had to proceed under 502A3.  Kagan is right. They're going to be called a functional administrator. I assume you don't care about that. Your Honor, we completely agree with the position. Under the plain language of the statute, 502A1b, there is no universe of potential defendants. The same rationale applicable in Harris Trust v. Solomon Smith Barney when analyzing 1132A3 is equally applicable. 1132A3 sets forth the parties that can bring suit. Under 1132A3, it's a participant, a beneficiary, or a fiduciary, but it does not set forth the defendants that can be sued. Similarly, 502A1b sets forth the parties that can bring suit, a participant or beneficiary, but it does not list the parties that can be sued. And the only reason why the district court got into the functional administrator was because of our prior law. That's exactly right, Your Honor, because the district court was fitting this case into Everhart and Ford. And once you have the ---- What happens if the we skip over those then and say you can sue the insurance company directly, Mr. Bernanke is quite worried that under those circumstances you've transformed the insurer into an entity liable for greater than what the insurer signed up for. Well, Judge Fischer, the Court had it exactly right that ---- And I was wrong, by the way. I did say that it was prohibited. Well, the Court can completely ---- The Court can completely dispense with labels here because all the Court needs to do is look at 502A1b, and so you don't have to label a party as a particular statutory administrator or something else. And so the Court can completely do away with the tests. In Everhart, for example, Everhart allowed room for a person functioning as an administrator or acting in a fiduciary capacity, but since this Court is en banc, it can completely do away with its tests. I understand that. We couldn't do that in Everhart. Okay. So with that out of the way, then does the ---- can you satisfy Reliance's concern that their liability not go beyond, you know, what they've signed up for under their insurance policy? Absolutely, Your Honor. And what that goes to is Judge Kaczynski's point that that's a liability question, not who can be sued. And 502A1b does not limit the universe of defendants. So we're not suggesting that RSL would be held to, for example, if it's not the statutory plan administrator, that it has to file forms. A lot of duties associated with the statutory plan administrator relate to reporting and disclosure. For example, filing form 5500s. We're not suggesting that all of a sudden, because RSL can be sued under a 502A1b claim for benefits, that now it has to file 5500s. So we ---- the issue that RSL really brings up is not relevant to this point. This is a claim for benefits under 502A1b. And if RSL is not the statutory plan administrator, then it's our position that RSL doesn't have the duty, for example, to file 5500s. What is the limit, however? Is there a limit as to ---- or how do we tell who can be a defendant? And I understand that you think that an insurance company that is an insurer for certain benefits can be sued. But if there's no statutory limit, who else could be sued? How do we tell who can be sued? Well, Your Honor, I think Judge Kaczynski made this point. There is no limit. So anyone can be sued, but not anyone can be held liable. Well, I understand that. But who can be held liable? I mean, at some point it becomes a question of who can be held liable. And is it just a fair causation question? Does it matter if they're a fiduciary, for example? Should our opinion at least be limited to now fiduciaries and we worry about other people later, or what? Well, no, Your Honor, I don't think that your opinion should be limited to fiduciaries. However, under this fact pattern, RSL has admitted that it's a fiduciary, so you could affirm the district court based on that holding. But I think it's a fact and circumstance issue, and I can give an example of that. Let's say that you've got an employer that is the statutory plan administrator, and that employer goes out of business. And let's say that employer also exercised discretionary authority. In other words, the employer was the person who was the fiduciary in that instance. Generally, the plan is served through the statutory plan administrator. So if the employer were to go out of business, for example, then it would be appropriate under an 1132a1b test to sue the insurer. So there are instances where it is beneficial to be able to use a facts and circumstances test with respect to liability. To interpret 502a1b as it was drafted and not limiting the universe of potential defendants. What is your view on the question I have, supposing counsel, as to what deference in any way I owe the Secretary? Your Honor, under Chevron, we believe that Chevron or – in this case, actually, the most direct authority would be our deference, because it's coming through an amicus brief. But we think that this Court – It's a regulation, right? I'm sorry. I didn't hear your question. Don't you need a regulation for our? Well, there is a – there are regulations involved here. There's, for example, 29 CFR 2560.503-1, which is the claims regulation. So it's really part and parcel of – there is a statutory provision, but there are also related – But the Secretary's brief doesn't interpret the regulation. It interprets the statute. Not directly. So if it's not our deference, then there would be at least Skidmore deference. Well, it's a regulation that it's Chevron deference, and we do owe deference in the Chevron deference. Well, it – my – yes. I'm surprised that you're sitting here discussing the nuts and bolts of the statute in such detail, when if it's deference, it's – you know, you are aiming too high. You don't really need to persuade us it's the best instruction. Did I understand you correctly to say that the amicus brief filing is owed some deference? We dealt with that recently in a case called Christopher v. SmithKline and said there is no such deference owed, except as pure logic. I mean, we can be impressed by the logic. But are you suggesting that there is some special deference that we owe in this situation other than Dow or Skidmore or Chevron deference? No, Your Honor. I'm not suggesting that it falls outside the parameters of the cases that you've mentioned. No. No, Your Honor. And I'm sorry, Judge Kuczynski, I didn't answer your question, but if you could repeat your question for me. Well, if we are in the area of Chevron deference, then we don't really have to persuade us this is the best construction. All we have to do is persuade us it's a plausible construction. And I'm not sure – I'm a little surprised you didn't hit that harder at first. But is there really Chevron deference here? Is this the kind of matter as to which we owe deference to the Secretary? Well, Your Honor, I think I – Remember, this is a question of who can get sued, you know, a question of who can walk into court and – or who can be hailed into court. It's a question of subject matter jurisdiction, really. So do we have subject matter jurisdiction over a claim over the insurance company? Is that the kind of thing for which the administrative agency gets any deference? I don't think, Your Honor, I don't think that the agency gets administrative deference for general jurisdiction issues. But I think to start off with, we don't believe that the statute is ambiguous. We don't think that – So you're not asking for deference, then? Well, if this Court were to hold – we're not asking for deference because we don't believe that the statute is ambiguous. Whatever the reason, you're not asking for any deference to the Secretary's view. We are not asking for deference only because we do not believe that the statute is ambiguous. If this Court were to hold that the statute is ambiguous, we would – because deference doesn't come into play unless the statute is ambiguous. That's similar to what would you ask us to defer? The Secretary of Labor has stated its opinion in an amicus brief, saying that – But for sure that's – Deference to an amicus brief. Yeah, which was the case in Auer, and I think that the – and again, I'm not familiar with the recently decided case that Judge Smith was referring to, but – but – and I want to – I want to admit that at the outset. But under Auer, when the Secretary wasn't a real party to the case, then under Auer, deference was accorded to the Secretary's belief. So we don't – we don't believe you need to reach deference because the statute is not ambiguous. I'm just saying both – both of you think the statute is perfectly clear. You disagree as to what is perfectly – says is perfectly clear, in which case you think no deference is appropriate because – because the statute is clearly in your favor. But assuming we disagree that the statute is perfectly clear in your favor, you would say that the Secretary is entitled to show non-deference? Yes, Your Honor. That's your position. And my question was, is this the kind of thing – is this the kind of issue as to which the Secretary or any administrator is given deference? And that is a question of who can be sued in court. And I don't think that's, you know, essentially a matter of the subject-matter jurisdiction of the court. I don't know. I mean, I'm asking the question. Your Honor, the answer is that, yes, it would – we believe it would be entitled to the interpretation of the Secretary because it's a construction of a statute. And the subject-matter jurisdiction is – you know, general matters of subject-matter jurisdiction, we don't think, you know, when it doesn't involve the ERISA statute directly, that the Secretary's position wouldn't be entitled to deference. But this subject-matter jurisdiction issue is intertwined directly with the language of the statute. But it can't be Chevron deference because there is no regulation and there is no – there was no regularized – and all we have is an amicus brief. So it can't be Chevron deference. And, Your Honor, under – there are varying degrees of Chevron deference, and that's why I actually – I think that it's either our deference or Chevron deference, and it's difficult for – Kagan, I thought Chevron deference needed an actual sort of public statement with procedures and so on, which you don't have here. Your Honor, you're testing my memory of Chevron deference, but my recollection of Chevron deference is that there's some pronouncement by the – it has to be a more formal-type pronouncement of a statute where the administrative agency interpreting the statute was actually given the authority to make such an interpretation. So to revise my answer a little bit, I would say it would be our deference, to be more accurate. I'm a little confused about your answer. If I understood correctly, you say that the statute is not ambiguous. Is that correct? Yes, Your Honor. Okay. So if there's no ambiguity and the – there is no regulation promulgated by the Secretary about the issue of who can be sued, and that's correct, is it not? Yes, there is no specific – yes, Your Honor, there is no specific regulation. So in that case, there's no regulation. The statute is not ambiguous. All we have here is an amicus brief by the Secretary of Labor encouraging this Court to find no ambiguity and to permit the insurance company to be sued. Other than deference to what we would normally owe to an official of the government in terms of an amicus brief, what possible deference could there be? There's no Chevron deference. There's no our deference. There's no Skidmore deference, is there? Well, Your Honor, my recollection – the answer is I believe there would be our deference because my recollection is that the – Is there a regulation? Well, I don't believe there has to be a regulation to invoke our deference. Really? That's at least my recollection. I don't want to say something that's inaccurate as a matter of law, but I believe that – That's why we don't rely on amicus briefs for Chevron deference. Well, but in our, it was the Secretary of Labor amicus brief. So you can't – Let me ask you a different question. I assume from your answer, if we open up the universe of defendants that can be sued under the statute, you're not limiting it to one defendant in each action. In other words, the plan administrator, potentially insurer, and all of the potentially liable defendants, in your view, can be sued in the same action and sort out liability among themselves. Is that your view? That's correct, Your Honor, although our position is that they would not have to be sued for this. No. For example – exactly, Your Honor. For example, in this instance – I'm getting to the insurance company's worry that there are going to be segregated proceedings in which liability can be determined on the plan, may not be under the policy and so forth. I mean, you're not – when you say you're opening up the universe of defendants, you're including all defendants in one action, potentially. Potentially, yes, Your Honor. Exactly, Your Honor. And in this case, we think the only defendant that should be necessary is RSL. It was the funding source of the plan and the only party that's admitted that it had discretionary authority to make benefit claim determinations. So in this case, you could have had a succinct action against solely RSL, but in other instances, it may be appropriate to name multiple defendants. And if they were concerned about the fact that you left people out, they could invoke Rule 19. Precisely, Your Honor. Precisely. And that's really the purpose of Rule 19, is a plaintiff should name, for purposes of Rule 19, necessary parties, and then the court has to make a decision as to whether or not the parties are indispensable. But Rule 19 should be analyzed. The whole universe of defendants should be permitted under 502a1b, but Rule 19 is a separate Federal Rule of Civil Procedure that can also potentially be applicable. The Supreme Court authority, I think this Court had it exactly right with the questions relating to the Supreme Court authority of Harris Trust, because, again, Harris Trust, the analysis applies equally, as I mentioned, to a 502a1b benefit claim. But more recently, in Metropolitan Life v. Glenn, the Supreme Court held that insurers under – in claims under 1132a1b are held to higher-than-marketplace standards. It would make little sense to hold insurance companies to higher-than-marketplace standards and then to hold that they can't be sued. Perhaps more importantly, the Supreme Court in Metropolitan Life v. Glenn, the insurance company was not the statutory plan administrator. And that's made clear in the district court decision of Glenn v. MetLife, as well as the Petitioner's Brief to the Supreme Court. Does the Supreme Court have any other questions? Kennedy, I'm going to ask you a question. As to a1b, when you read the language therein, the worry that I have, it seems to me that the first clause, if you will, of that particular statute says, to recover benefits due him under the terms of his plan. Are you suggesting that one could sue the insurance company for that? Well, Your Honor, to answer your question, yes. I mean, what in that language suggests that the insurance company should be responsible for that? Your Honor. They don't owe the participant or the beneficiary anything under the terms of his plan? The plan owes them. Well, I disagree. The only – first of all, the terms of the plan is really the language in 502a1b mentioning the terms of the plan. I agree. It's not intended to address the entity. It's simply talking about the documents and instruments governing the plan. And that's – in every place that plan is mentioned, it talks about the terms of the plan. It doesn't say to recover benefits against the plan. It talks about the terms of the plan. So that section is simply referring to the documents and instruments governing the plan. And here, the only document or instrument governing the plan was the policy. There was not even a summary plan description in this case. But usually there will be, and usually there will be a plan as well. This was just an oddity. And the plan, for example, might not specifically say when the person – it might not even say what the insurance – who the insurer is. Is that right? The plan – well, the summary plan description is required to say the insurer and the plan is required to state the funding source. So the answer is yes. Generally, a lawful plan will state the funding source. And so – but going back to Judge Smith's question, I don't think the recovery – the reference to the plan has anything to do with the status of the plan as an entity. It's just talking about the source of the rights, and that is the documents governing the plan. Because, frankly, I'm trying to question you about counsel's argument that A1B really determines who people could be sued. And frankly, I'm trying to question you about his argument. When he gets to D, that's a different story. But I'm really after his argument, because it seems to me his argument fails when we talk about to enforce his rights under the terms of the plan, because, of course, that would be something where the plan would pay. It's a right under the plan. In order to determine his rights to future benefits under the terms of the plan, you're just suing to make sure you get the – what the plan would pay. So if I'm going to give him any benefit at all, I have to look at the first clause. That's why I'm having you think about that. Well, Your Honor, and the point I would make with respect to that is that when Congress intended to set forth who it should be or can be a defendant under one of its statutory causes of action, it knew how to do so. For example, in the provision between 502A3 and 502A1B, which is a – is 502A2, which is a claim for fiduciary breach, 502A2 actually sets forth that only fiduciaries can be sued by incorporating ERISA section 409. So Congress did know how to say when it intended to limit who can be sued. You're cutting into the Secretary's time. Thank you, Your Honors. And for these reasons, the reasons stated in our brief as well as the Secretary's amicus brief, this Court should affirm the decision of the district court and grant the appleee her fees and cost of appeal. Thank you, Your Honors. Okay. Thank you. Good afternoon, Your Honors. My name is Stacey Elias, and I'm here on behalf of amicus curiae Hilda Solis, the Secretary of the United States Department of Labor. And obviously, the Secretary is here today to ask this Court to overturn the previous Ninth Circuit case law and hold that an insurance company that is wholly responsible for both deciding a claim and paying a claim is indeed a proper party defendant under 502A1B. Go back to some of the questions we were asking. How would you – the way you just said it, you would – you seem to be suggesting that there is some implicit limitation on who can be sued under A1B. How do we know who that is or how – or who is liable under it? I'm not implying that at all. The – the – as has been discussed by both Judge Kaczynski and Pappalee, the limit comes in liability, but not in who may be named. Now, the reasons for why – But they're not really separate. I mean, it seems to me that it would be kind of foolish for us to say that you can sue the insurance company without some idea about what is getting them in there. I mean, what it is about this language that is pulling them in and why it wouldn't pull everybody in to be liable for everything. Exactly, Your Honor. And – and 502A1B offers three specific areas that a participant or beneficiary may seek relief – may – in which they may seek relief. The first is recovery. Recovery of benefits due them under their plan. The second is enforcement of their rights under the plan. And the third is a clarification to future rights. The limitation is based on what parties, be they fiduciaries, third-party administrators, benefits committees, what have you. The limit is who is responsible for seeing that the participants and beneficiaries can get their relief in any of those three categories. Ms. Elias, let – let's just assume for a moment that we were to sweep away Ford and Everhart and Ghilardi. What's the standard, if the Secretary could dictate the new standard for whom you could sue, what would it be? I think it's very similar to what I just stated, that the party who has the – I want to be careful about my – a misconstruing of my use of the word administrative responsibility, which I do not mean to include the definition of plan administrator, which has been used incorrectly in a lot of the briefing here. Whoever has the – So to that degree, you agree with Mr. Bernanke, we don't need to get into nomenclature? Absolutely not. Yes, I absolutely agree with him. No, we absolutely do not have to get into nomenclature. The parties who are responsible for the administration, the management, the operation, if you look at the definition of a fiduciary under 321, if you look at what fiduciary duties can be assigned and delegated between 402 and 405, you see a whole bunch of words that deal with running a plan. You see management. You see operation. You see administration. And the parties who are responsible for those activities, and in this case, as we know from the Supreme Court in the Massachusetts, the Met-Lifeby-Glenn case, claims administration is a fiduciary responsibility. You look to those activities, and that would be where you find what party – I hear what you're saying, but I'm asking you to, in effect, if you were writing this out – well, let me do it this way. Judge Reinhardt, in his dissent, said the following in Eberhardt at 759. Just a brief part of it. He says ERISA permits suits against parties responsible for providing or administering ERISA benefits and making discretionary decisions as to whether benefits were owed. Is that an accurate statement of a standard that would be acceptable to the Secretary? I'm not agreeing with it. I'm just saying, what's the Secretary's position with respect to that language? I think the Secretary would consider that an accurate statement. How about the party responsible for paying the benefits? Sometimes it's two parties, but whether or not the party responsible for paying benefits would be responsible would be dependent on the reason that party is refusing to pay benefits. It would also be dependent on what other responsibilities that party may have. In this case, that party is also the claims administrator. In some cases, there may be another claims administrator who sends instructions to a funding source. A funding source. Again, that's just a question of who you can sue. Can't you sue the party that's responsible for paying the benefits? Yes. I think that there would be no categorical exclusion of that party under anything in ERISA, and I think that goes to Justice Smith's comment or question about – did I apologize? A question about the recovery provision of 502a1b. The party with the funding source would be the party in the position to afford a participant or beneficiary recovery under 502a1b. So it would be – there would be no categorical exclusion of such a provision. First of all, do we need to decide this beyond saying this is within it and where the ad litem it's all we don't need to say right now? I'm sorry. May I ask you to repeat? Well, I'm just wondering if we really need a definition, an exclusive definition at this juncture as opposed to a recognition that the insurance company that is in the position to both pay and make the claims decision is within it and who's outside of it we don't really need to say at this point. That's exactly the Secretary's position, Your Honor. We don't believe that there's a categorical list now. We're not here to create a categorical list. We're not here to include anybody within the nomenclature that's been bandied about by the briefs in this particular case. And it doesn't have to necessarily be someone who's a fiduciary. It doesn't necessarily. It would be – I would be interested in the case where it's not, but – Well, for example, your back to Dr. Felicis, where you said – or Dr. Reinhart's where, in answer to his question, you said somebody may have directed an entity to make a payment, and that entity holds the money but isn't paying it. So that would be a suit to enforce rights under the terms. Exactly. Yes, Your Honor, I was going to say the same thing. Okay. If that person may not be a fiduciary, I don't know. But it may be just a pay agent. But you – your position is that person could be brought into suit to compel their obligation to whoever directed that person to pay? The – yes. And I misspoke before because I was thinking more in terms of the liability concept of somebody being responsible, and it's the question of – Well, that's what I was trying to write it down, in fact, to be all-hours. Right. What is the – what defines the duty? You say responsibility. You have to sue for a breach of something. And if it's either – if you're implying that it has to be breach of a fiduciary duty, but I gather you're not saying it's a breach of some duty that's traceable to enforcing rights under the plan or so on and so forth. It's a breach of a contractual obligation, and that's what the Supreme Court said in Mance Mutual v. Russell. There is – these are contractually defined benefits. And as Mr. Bernanke said earlier and which Apelli said as well, there is – 502-A1B is not a fiduciary breach claim. But a – but for somebody to be a fiduciary, they would often be – to be engaged in the activity that is listed in 502-A1B for which a participant or a beneficiary could get relief, more than likely your party is going to be a fiduciary, but that doesn't limit who you might sue. That might go, again, to liability. Could you take a minute on the deference that's owed to you? I think I agree that we do not have Chevron deference. There – the Secretary is charged with the authority to interpret the statute, but has not made any pronouncements with respect to who is a defendant or isn't a defendant. But in any event, I think I would agree with Apelli that there is no ambiguity here. The ambiguity of ambiguity of deference would be clear. Excuse me, sir? Your own deference, but you think your views are persuasive? Yes. We just – there may not be any ambiguity as to whether it's limited to the plan or the plan administrator, but as to who it is limited to, we just had a very long discussion, and there doesn't seem to be anything in the statute that tells us. But I – what the Secretary's position is, is that's not an ambiguity. That's a conscious choice to avoid limiting defendants. I mean, the title of five minutes – But in any event, either that's persuasive or not persuasive. You don't think that the Secretary is tied to any deference in this? There's a bound line. I know you feel very strongly that I – Not the Chevron – not the Chevron and type of Chevron in our case. Any kind of deference. Yes. No, Your Honor. All right. I think we'll hear from – I think Ms. Bernanke had a few more minutes left. Thank you for your time. Thank you. Hearing your questions, it's like that parable, who's going to bell the cat? I mean, everybody comes up with a good idea, but until you put it into practice, you start to see that it's a lot more complex than you think. So why not resolve it in a unitary proceeding? And I agree with that. But one of the things they've said is, well, why don't we just have entities that have discretion over the decision for benefits to be liable under 502a1b? But how are you going to do that? Are you going to make them liable under their individual capacity? No, but I think the decision here is not who's liable under what theory. It's who can be sued. Well, but you're going to get a judgment against them. That's what's important. And Hartford, for instance, or Cigna, they not only provide insurance, they provide administrative services only to entities. They make the discretionary decision a lot of times for short-term disability benefits and perhaps for long-term disability benefits. Once you start saying that these insurance companies are liable under 502a1b and people get judgments against them for short-term disability benefits that they have no obligation to pay, those judgments are going to be enforced against them. And it's going to raise premiums for everybody, because they're going to have to turn around and get that money from the employer. How would the insurance companies write this? Again, I'll ask you the same question I asked for the Secretary. If we did away with Ford and Everhart and Gillardy and we came up with a new standard, what would it be, according to you? I think the standard would be if they're a fiduciary, they fully fund the plan and they make the benefit determinations, they could be liable up to the terms or up to the terms of their policy. But you would limit it. You would actually limit what they could recover as opposed to just who could be sued. Exactly. Exactly. And I think it's important that not only do they make the discretionary decision, but they're also the funding source. What you don't want are these participants getting judgments against entities that don't have any obligation to fund them, basically. Because we don't have that situation in this situation. We're just talking about who would be suable in this case. It might be. I'm not sure if it would be. I think that a formula or a decision from the Ninth Circuit en banc explaining basically who could be sued and up to what limits would have great weight. I know, I think it was in Verity Corp, the Supreme Court went ahead and made a statement, something to the effect of, you know, you can have a 502A3 claim, but it doesn't exist if you can also recover under 502A1B. They didn't need to make that statement, but that statement was highly persuasive and nobody actually, it's the accepted law now in the Ninth Circuit and every other circuit that I know now. Well, let's assume for a moment that, let's say the Court didn't agree with. I don't know the way to be put on the same level as the Supreme Court. Let's just say for a moment that, arguendo, that the Court didn't want to go to the issue that you just raised, and they were strictly talking about who could be sued. How would you articulate that? If they were strictly talking about who could be sued and assuming that they're not going to uphold, we're not here today to uphold Ford and Everhart, it's something else. Yeah, it's all hypothetical, of course. I would argue that what you would want is an entity who, a fiduciary, you know, if they're a fiduciary and they're responsible for making the claims decisions. So you would limit it to fiduciary? Yes. And when you say you're a fiduciary, are you saying you're a fiduciary vis-a-vis the employer or vis-a-vis the employee? We're a fiduciary to the plan. We're making discretionary decisions over the benefits, so for both, basically. So does that mean that your company is included? Included in? Those who may be sued. Assuming you're going to ever tire Everhart – assuming you're looking to overturn Everhart and Ford, I would say in this particular case, if you're asking me for what path to take, yes, I think that they would probably be included if you're going to go in that direction, yes. They're an insurance company. It's a fully insured plan, and they're making the discretionary decision on the terms – as to who's entitled to benefits. But I think we have to be very careful, because, once again, plans – some of these plans are very complex. You have administrative services agreements provided by insurance companies. You have fully insured plans. You have stop-loss coverage where the insurance company only kicks in after a certain period of time. But you're just emphasizing the fact that one size doesn't fit all. I would think the last thing in the world you would want us to do is to try to create such a matrix. Well, I don't think that – you're absolutely right in that situation, but I think limiting it to this – the facts of this particular case, where there is an insurance policy and where we did make the claims decision, I think you could come out and say if it's a fully insured plan – But it was also a reinsurer, right? I'm sorry, what? It was also a reinsurer, and it appears that the reinsurer may have been the entity that actually finally denied the claim. So what about them? Could they be sued? That's a good question. I'm here today to argue that the plan should only be sued, but I would argue no. I mean, there's – at least with the initial insurance company, there's direct contractual privity with the employer. There you're a step removed, basically. Could you explain to me – I'm not sure I understand – why you think there is value to keeping Eberhard and Ford? Well, I think in certain circumstances it's a lot easier. The system actually works, believe it or not. These insurance companies are going out there and they're basically accepting the tender of defense from the plans. It's only in these limited situations. I'd be surprised if you guys had any other case in which an insurance company just said, we know benefits are payable, but we're bulletproof and we're simply not going to pay it because of this statute. This was a unique – we're paying the claim. This was a unique case based on a wage adjustment that we found to be highly dubious, basically. And so it really is a unique case in that situation. But under a different regime, you could accept the tender of defense as well and defend both entities, or you could deny the defense. Exactly. No, exactly. Exactly. One last thing I would like to add before my time's up, and I don't know if this is the proper forum, but rather than doing a brief, we still got other issues and I know the Court defined – I wasn't sure if this is getting back – remanded back to the three-judge panel or – We'll think about it. Okay. Thank you very much for your time. Appreciate it. Thank you. Thank you. Thank you. Thank you. Congratulations.  Thank you. Congratulations. Thank you. Thank you.
judges: Kozinski, Schroeder, Reinhardt, Thomas,silverman, Fisher, Berzon, Clifton, Bybee, M Smith, Nr Smith, Cjj